OPINION
{¶ 1} This is a criminal appeal from a conviction for aggravated robbery with a gun specification, for which appellant, Wilson Adams, was sentenced to a total of twelve years in prison.
 {¶ 2} A bank robbery was committed at a branch of the Bank One bank on Youngstown-Niles Road in Warren, Ohio, on July 9, 2003. The teller who was robbed described the assailant as an African-American male, who was wearing sunglasses, a yellow poncho raincoat, and a baseball cap. He was also wearing a fake beard and mustache and passed a note to the teller telling her to give him one hundred dollar bills, but not to give him dye packs or bait money. At that time, the teller was not in possession of many one hundred dollar bills and had to give him other denominations to try to satisfy him. The assailant became agitated and kept urging the teller to produce more one hundred dollar bills. He patted a bag on his side a number of times, which she interpreted to mean that a gun was contained in the bag. After taking cash in the amount of $3,537, the assailant exited the bank, and the teller immediately sounded the alarm.
 {¶ 3} Another bank employee saw the assailant get in the passenger side of a Chevy Blazer and speed away from the bank premises. The police were given a description of the vehicle and stopped an individual named Westley Smith as he was leaving a convenience store. Finding no apparent evidence of a bank robbery, Smith and his vehicle were released at that time. Minutes later, a better description of the fleeing vehicle was obtained, and police realized that they had just recently stopped the vehicle in question. Having obtained Smith's address in the initial stop, the police went to his residence at 1730 Brier Street in Warren. Smith was brought back to the bank for identification purposes and was identified as a customer who had been in the bank prior to the robbery, but that he was not the actual robber.
 {¶ 4} In the meantime, the police had found a fake beard in the front yard of another residence near Brier Street and had also located a bottle of latex adhesive between Smith's house and the house next door, in which Adams happened to reside. A receipt for a fake beard purchased from Ward's Costume Shop was found in Smith's Blazer, and Smith was identified as the purchaser of the fake beard. After questioning Smith, and after Smith identified Adams as the person whom he drove to Bank One on the date in question, police obtained a search warrant to search Adams' house, where they found a yellow raincoat and a baseball cap that matched the teller's descriptions. They also located a nine-millimeter handgun underneath a couch and a photograph, taken some time before the robbery, of Adams holding a gun. The weapon was test-fired by the police and found to be operable. The police also obtained a search warrant to search Adams' vehicle and found a deposit slip for a $500 deposit to another bank on the same date as the robbery. A DNA specimen was taken from Adams' person and analyzed by BCI, the result being a match with a specimen from the fake beard found by the police during their investigation.
 {¶ 5} Adams was indicted for this bank robbery, as well as another bank robbery, which occurred in 2001, however, the second count, relating to the 2001 bank robbery, was severed prior to trial.
 {¶ 6} Adams filed a motion to suppress evidence resulting from the search of his home, his automobile, and his person. This motion was denied.
 {¶ 7} The jury returned a guilty verdict to the charge of aggravated robbery, a violation of R.C. 2911.01(A)(1), and found him guilty of the firearm specification. The court sentenced Adams to nine years in prison for the aggravated robbery conviction and three years for the firearm specification, the three years to run prior to and consecutive to the nine years, for a total of twelve years in prison.
 {¶ 8} The first attorney representing Adams in this appeal presented three assignments of error, all relating to the weight of the evidence presented at trial. The second attorney representing Adams in this appeal filed an additional assignment of error relating to ineffective assistance of counsel. We shall treat them in the order they were presented.
 {¶ 9} Adams' first assignment of error states:
 {¶ 10} "The evidence was insufficient to support appellant's firearm specification conviction."
 {¶ 11} In this assignment of error, Adams is drawing to our attention the facts that no weapon was brandished to the bank teller at the time of the bank robbery, no oral threats with a gun were made at that time, and that a gun was not otherwise visible. The fact that the bank robber patted a bag that was on his person and the fact that the bank teller interpreted this gesture to mean that he had a gun on his person are not sufficient, argues Adams, to constitute legally sufficient evidence.
 {¶ 12} The statute governing the firearm specification provides as follows:
 {¶ 13} "Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."[1]
 {¶ 14} The indictment in this case did specify that Adams had a firearm on or about his person or under his control, and while in the commission of the offense, he either displayed the weapon, brandished it, indicated that he possessed it, or used it. Moreover, the Supreme Court of Ohio has held on this issue that "a firearm penalty-enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence."[2] That court has also stated in this respect that "it is apparent that the General Assembly intended that the state `can rely upon all of the surrounding facts and circumstances in establishing whether a firearm was used in the commission of a felony.'"[3]
 {¶ 15} Adams would have us view the gesture that was made in patting the bag that was on the assailant's person as being legally insufficient to sustain a conviction for a firearm specification. Our inquiry, however, is whether viewing the evidence in the most favorable light to the prosecution, a rational trier of fact could have found the essential elements of the offense to have been proven beyond a reasonable doubt.[4]
 {¶ 16} In analyzing sufficiency of the evidence in conjunction with the foregoing statute, the questions the court would have had to answer in the affirmative were, did Adams indicate to the bank teller that he possessed a firearm and did he use it to facilitate the offense of aggravated robbery?
 {¶ 17} The evidence indicating that Adams patted down a bag or "fanny pack" as he demanded one hundred dollar bills from the teller, and that she interpreted these gestures to indicate that he did have a firearm on his person, is sufficient, for purposes of the statute, to indicate that he possessed a firearm. That the firearm was used to facilitate the offense is clear, inasmuch as the bank teller handed over cash to him in the amount of $3,537 as he was patting down the fanny pack, where she believed a gun was located.
 {¶ 18} Moreover, there was other evidence introduced to indicate that Adams had a gun on his person. Specifically, once he entered Smith's getaway vehicle as a passenger and observed that Smith was getting cold feet, Adams brandished the weapon at Smith, made him speed away, and made him go through a red light in order to facilitate his escape. A reasonable trier of fact could easily conclude that the same weapon Adams brandished in the getaway vehicle was on his person in the bank when he was holding up the bank teller. Not to be overlooked is the additional fact that in the search of Adams' residence the police found a nine-millimeter handgun within hours of the robbery, and that Smith identified this weapon as the one that was brandished by Adams in the getaway vehicle.
 {¶ 19} We are also persuaded by other appellate decisions where the offender was found guilty of a firearm specification, even though a weapon was not made visible to the victims. For example, in the case ofState v. Jeffers, the defendant "indicated he possessed a firearm by the manner in which he concealed his hand in his pocket" and threatened to blow the clerk's head off with it.[5] Also, in State v. Haskins, the defendant asked a gas station attendant, whom he was robbing at the time, "`[a]re you going to give me the money or do I have to pull this pistol out of my pocket?'"[6] Even though the attendant never saw the gun, this evidence was deemed sufficient to show that the defendant had a weapon during the commission of a robbery.[7]
 {¶ 20} In sum, Adams' gestures to the fanny pack on his person, which the bank teller interpreted to mean that Adams had a gun in his possession and which caused her to surrender the cash sum of $3,537 to him, as well as the testimony of Smith that Adams brandished a weapon in front of him, were legally sufficient for the trier of fact to conclude beyond a reasonable doubt that Adams indeed was in possession of a firearm at the time of the bank robbery.
 {¶ 21} For the above reasons, Adams' first assignment of error is without merit.
 {¶ 22} His next assignment of error states:
 {¶ 23} "The appellant's firearm specification conviction is against the manifest weight of the evidence."
 {¶ 24} In this assignment of error, Adams urges us to depart from the sufficiency of evidence analysis, which we discussed in his first assignment of error, and move to a limited weighing of the evidence. With this latter approach, we are to determine if the firearm conviction was against the manifest weight of the evidence. This differs from a sufficiency of the evidence analysis insofar as the evidence is no longer viewed most strongly in favor of the state. In this connection, we are to determine whether "the jury clearly lost its way and created * * * a manifest miscarriage of justice."[8] In addition, we consider those factors enunciated in the case of State v. Mattison:
 {¶ 25} "1. The reviewing court is not required to accept as true the incredible;
 {¶ 26} "2. whether evidence is uncontradicted;
 {¶ 27} "3. whether a witness was impeached;
 {¶ 28} "4. what was not proved;
 {¶ 29} "5. the certainty of the evidence;
 {¶ 30} "6. the reliability of the evidence;
 {¶ 31} "7. whether a witness' testimony is self-serving;
 {¶ 32} "8. whether the evidence is vague, uncertain, conflicting or fragmentary."[9]
 {¶ 33} Adams argues that this court should consider that it was not proved that the robber had a gun, that no one testified to seeing a gun, nor did anyone testify that the robber said he had a gun.
 {¶ 34} With respect to the facts urged upon us by Adams in his manifest weight argument, we believe that his view of the facts is short-sighted. When viewing the evidence as a "`"thirteenth juror,"'"[10]
which we are required to do in the manifest weight analysis, we are guided by:
 {¶ 35} "`[T]he inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount ofcredible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effectin inducing belief.'"[11]
 {¶ 36} When this court weighs the evidence under a manifest weight analysis, it must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"[12]
 {¶ 37} Under this analysis, and with the above guidelines in mind, the evidence as we weigh it is all probative of the fact that Adams did indeed have a gun in his possession at the time he committed the bank robbery: the fact of patting down his fanny pack while he was agitating for one hundred dollar bills, the fact that the bank teller was made to believe by his gesturing that he had a gun in his possession, the fact that Smith testified that he brandished a gun while in the getaway vehicle, and the fact that the police found a gun in Adams' residence within hours of the robbery are all facts that the jury could find to be credible and that could support a guilty verdict. The jury did not lose its way here, and the conviction is not against the manifest weight of the evidence.
 {¶ 38} The second assignment of error is without merit.
 {¶ 39} The third assignment of error is "[t]he appellant's convictions are against the manifest weight of the evidence."
 {¶ 40} In this assignment of error, Adams focuses on the conviction for aggravated robbery. To sustain this conviction, the jury was required to find that, in attempting or committing a theft offense, Adams had a deadly weapon on or about his person or under his control, and either displayed the weapon, brandished the weapon, indicated he possessed it, or used it in Trumbull County, Ohio on the day in question.
 {¶ 41} Adams wishes to point out all the guilty acts committed by Smith during the course of the robbery, in effect arguing that Smith might be guilty of aggravated robbery, and his conviction is against the manifest weight of the evidence. In doing so, however, he neglects the unrebutted evidence linking him to the crime. This would include his approaching the bank teller and handing her a note demanding one hundred dollar bills, without dye packs or bait money, his agitated and constant demands to produce one hundred dollar bills, his patting of his fanny pack to make the teller believe that he had a gun on his person, his exit from the bank with $3,537 from her cash drawer, and his brandishing of a gun to Smith to make him exit the bank premises in a hurry.
 {¶ 42} Add to Adams' actions the physical evidence linking him to the crime: the DNA evidence from the fake beard found not far from the scene, the yellow raincoat and baseball cap found at Adams' residence that the teller identified as the ones worn by him during the bank robbery, and the nine-millimeter handgun found at his residence within hours of the robbery.
 {¶ 43} We have previously discussed the factors to consider in weighing the evidence under a manifest weight of the evidence analysis in the second assignment of error and will not repeat that discussion with respect to the third assignment of error. A review and weighing of the evidence and testimony adduced at trial compels us to conclude that the jury did not lose its way in concluding that Adams committed aggravated robbery of the Bank One branch on the day in question and that all the elements of the offense of aggravated robbery were made out by the prosecution, including having a firearm on or about his person or under his control. The jury reasonably concluded that Adams committed the bank robbery, and that he did it with a gun.
 {¶ 44} The third assignment of error is without merit.
 {¶ 45} The fourth assignment of error is as follows:
 {¶ 46} "The appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 47} Adams itemizes his trial counsel's ineffective assistance of counsel to include his failure to prepare for trial; an incident of ridicule of Adams in front of another person; failure to highlight the differences in jewelry inventoried in the jail and the jewelry worn by the bank robber; failure to object to witnesses' inconsistent testimony; failure to object to the prosecution's equating Adams' dark skin with proof of guilt; waiver of speedy trial without Adams' consent; failure to exclude the introduction of a photograph taken long before the robbery depicting Adams with a gun; failure to initiate background checks on police investigators who are known to "plant" evidence; failure to use exculpatory evidence provided by Adams; failure to object to a violation of the rules against double jeopardy; and failure to object to a supposedly fraudulent signature on the indictment.
 {¶ 48} These eleven acts or omissions of Adams' trial counsel will have significance in this court only if they pass muster with the two-part test to demonstrate ineffective assistance of counsel sufficient to warrant reversal of a conviction by a jury. First of all, it is necessary for Adams to show that trial counsel's performance was deficient, and, secondly, he must show that such deficiency resulted in prejudice to the extent that, if not for trial counsel's errors, the trial would have had a different outcome.[13] Further, a properly licensed attorney is presumed to be competent.[14] In addition, a court of review will not second guess the trial strategy employed by trial counsel.[15] Thus, it is not enough to show that trial counsel was deficient in his representation; it must also be shown that such deficiencies, if any, would have resulted in a different outcome.
 {¶ 49} With respect to the first itemized act of ineffective assistance of counsel, that being his supposed failure to visit Adams in jail in order to prepare for trial, we note that even if Attorney Large, the trial counsel below, failed to visit Adams in jail to Adams' satisfaction, counsel did participate in prosecuting a motion to suppress filed by Adams' previous counsel; he was successful in severing Count 2 of the indictment and thereby keeping out testimony relating to other bank robberies supposedly committed by Adams; he filed a motion in limine to keep out certain documents and photographs; and he did go on a house-to-house search to attempt to locate a helpful witness. This was in addition to presenting an opening statement and a closing argument on behalf of Adams, as well as cross-examining all thirteen of the state's witnesses.
 {¶ 50} Whether or not Attorney Large visited Adams in jail, there is no showing by Adams that such an omission constitutes ineffectiveness, especially when viewed against those acts of representation that Attorney Large did perform in his behalf.
 {¶ 51} Next, Adams says that Attorney Large was ineffective because he referred to Adams as an "asshole" and that he did not like him "from the start" and that he made these remarks to a corrections officer. We fail to see, however, how the voicing of counsel's personal opinion about the personality of Adams to a corrections officer necessarily means that he was ineffective; and there is certainly nothing in the record to demonstrate how these remarks would have led to a different outcome in the verdict.
 {¶ 52} Adams next argument concerning ineffective representation goes to counsel's failure to point out inconsistencies between the bank teller's identification of him and his actual appearance. Specifically, he claims his two front teeth are gold and one of them has a diamond implanted in it; and the jewelry he was wearing upon arrest three days later is not the same jewelry depicted in the surveillance photographs shown at trial. These aspects of his appearance, says Adams, point out inconsistencies in the teller's testimony that should have been highlighted by his trial counsel.
 {¶ 53} However Adams chooses to adorn himself is of no moment to this reviewing court, because there is no support in the record that gives us cause to focus on either of these two aspects. First of all, there is no evidence in the record that Adams ever showed his teeth or that the bank teller ever saw them. The surveillance photos that were shown to her do not depict the teeth of the robber. Moreover, counsel did bring out this distinction in his final argument to the jury, and we are not going to speculate as to why he did not ask the bank teller about the person's teeth. Perhaps the reason is that he knew the answer would be detrimental to his client.
 {¶ 54} Secondly, in the three days between the date of the offense and the date of his arrest, Adams could have changed his jewelry any number of times, so we are not going to fault his counsel for failing to try to bring out an inconsistency in this area. Once again, there is nothing in our review of the record, including the relevant photographs, which would show that there actually was an inconsistency in the jewelry worn by the bank robber and that were found on Adams' person on the date of his arrest.
 {¶ 55} Adams next argues that another bank employee present during the robbery at one time says that Adams was picked out of a lineup and, on another occasion, says that he was not picked out of a lineup. A review of the record, however, shows that there was no lineup in which Adams was included for the employee to pick out Adams. There was a "show-up" involving his fellow perpetrator, Smith, but there was no lineup of either person. There was no ineffective assistance of counsel in this respect.
 {¶ 56} Adams next argues that his conviction was a "racist conviction" on the theory that when the prosecutor asked Smith about his parentage, and brought out that his mother was white and his father was black, thus accounting for Smith's lighter skin tone as compared with Adams, that these were "racist questions" and that the proceedings thereby became "racially charged." Adams' logic is that if Smith is guilty of the commission of an offense, to which he pled guilty prior to Adams' trial, and Smith participated in the bank robbery, then Adams must be equally guilty because he is darker skinned than Smith. A review of the record, however, shows that the questions relating to different shades of skin tone went to identification of the actual robber and served to differentiate Smith, the lighter skinned driver, from Adams, the person who actually entered the bank and took the cash. In fact, one of the witnesses, who was a bank employee and was also African-American, used the difference in skin tones to distinguish between the two individuals. The record demonstrates that this line of questioning was utilized for identification purposes and not to interject racial overtones into the proceedings.
 {¶ 57} Whether Adams waived his speedy trial rights is next raised by Adams in support of his argument that trial counsel was ineffective. Adams cannot have it both ways, however, because the reason his trial did not commence within ninety days from his arrest is because his counsel filed numerous motions, which had the effect of tolling the time for speedy trial. These motions included motions for discovery, a motion to suppress evidence, and motion in limine. Though Adams was arrested on July 12, 2003, and his trial did not commence until January 12, 2004, a lapse of one hundred eighty-six days, the motions that were filed tolled the speedy trial clock for one hundred days, resulting in a net chargeable period of eighty-six days, still within the ninety-day requirement. Counsel was not ineffective in this respect.
 {¶ 58} Adams next criticism of his counsel is to the effect that he was unable to exclude a photograph of Adams taken months prior to the bank robbery, which depicts him holding a gun and wearing a gold watch on his left wrist and a gold bracelet on his right wrist. Counsel did try to keep this photograph out of the trial, but was unsuccessful in doing so. To this end, he filed a motion in limine to keep the photograph out and objected to its admission at trial. The fact that the trial court overruled him in this regard does not make his performance ineffective.
 {¶ 59} Adams' mistreatment by an officer in a holding cell is next raised by him in support of his argument for ineffective assistance of counsel. If he was mistreated during the pendency of the case, this is not necessarily relevant to his guilt or innocence at trial. The mistreatment, if any, did not result in any damning statement or confession being admitted at trial, because there were none, so this allegation has no bearing on whether counsel was ineffective. Likewise, Adams' allegation that another Warren police officer has received publicity about planting evidence in other cases can have no bearing in this case, because there is nothing in the record to show that the officer in question had any access to the physical evidence that was introduced at trial.
 {¶ 60} An additional point raised by Adams to buttress his argument for ineffective assistance of counsel is to the effect that Attorney Large was told that Smith threatened to kill Adams on numerous occasions because Smith's girlfriend expressed to Adams the wish that he was the father of her child instead of Smith. This would certainly be a motive, says Adams, for Smith to testify that Adams was the one who robbed the bank, but that counsel did not raise the issue.
 {¶ 61} Not only is there no support in the record to advance this issue, but consider that Adams' attorney could very well have determined that the better strategy at trial would be to paint Smith as a liar who gave numerous inconsistencies to the police during their investigation. After all, Attorney Large might not have been persuaded that the love triangle Adams alludes to would make any difference in the eyes of the jury. Smith chose not to kill Adams, but chose instead to plan the bank robbery with Adams, including trips to a costume shop to buy a fake beard for him, drive him to the scene of the bank robbery in his own car, and, then, lie to the police within minutes after the robbery to protect Adams.
 {¶ 62} Adams next moves to a double jeopardy argument in which he says he was first prosecuted in Warren Municipal Court, that this case was dismissed; and then he was indicted and prosecuted in the trial court. Nowhere in the record are we provided with substantiation that proceedings might have taken place in another court. More importantly, the issue of double jeopardy comes into play only when jeopardy attaches. There can be no protection against double jeopardy where jeopardy has not attached.[16] Adams has provided no support in the record for the proposition that jeopardy has attached in any other proceeding.
 {¶ 63} Finally, Adams argues that trial counsel should have noticed that the two signatures of the grand jury foreman on the indictment appear to be different, that this difference constitutes fraud upon the court, and that counsel should have objected to the fact that the signatures appear to be different. Adams asks too much of this court in this allegation, because this court does not do handwriting analysis. Moreover, for all we know, trial counsel did look at the two signatures and found them similar enough not to object to any differences. We have no way of knowing what was on counsel's mind in this respect, but we do know that, lacking any salient proof of fraud in the indictment, we cannot say that counsel's failure to object to it constituted ineffective assistance of counsel.
 {¶ 64} In sum, we do not believe that Adams suffered any prejudice as a result of trial counsel's performance. The acts and omissions cited by Adams to show that counsel was ineffective do not satisfy the two-part test of State v. Bradley, because Adams has not shown counsel's performance to be deficient, nor has he shown a reasonable probability that but for counsel's errors, if any, the outcome of the trial would have been different.[17]
 {¶ 65} For these reasons, Adams' fourth assignment of error is without merit.
 {¶ 66} The judgment of the trial court is affirmed.
Rice, J., O'Toole, J., concur.
[1] R.C. 2941.145.
[2] State v. Thompkins (1997), 78 Ohio St.3d 380, 385.
[3] Id., quoting State v. Murphy (1990), 49 Ohio St.3d 206, 208.
[4] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307.
[5] State v. Jeffers (2001), 143 Ohio App.3d 91, 95.
[6] State v. Haskins, 6th Dist. No. E-01-016, 2003-Ohio-70.
[7] Id. at ¶ 47-48.
[8] State v. Tompkins (Oct. 25, 1996), 2d Dist. No. 95-CA-0099, 1996 Ohio App. LEXIS 4637, at *29.
[9] (Emphasis in original.) State v. Mattison (1985),23 Ohio App.3d 10, syllabus.
[10] State v. Thompkins, 78 Ohio St.3d at 387.
[11] (Emphasis added by Supreme Court of Ohio.) Id., quoting Black's Law Dictionary (6th ed. 1990) 1594.
[12] Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
[13] State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus.
[14] Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301.
[15] State v. Smith (1985), 17 Ohio St.3d 98, 101-102.
[16] (Citations omitted.) State v. Uher (Apr. 25, 1997), 11th Dist. No. 96-P-0208, 1997 Ohio App. LEXIS 1708, at *12-13.
[17] See State v. Bradley, supra, paragraph two of the syllabus.